IRVING, P.J.,
dissenting:
¶ 29. In my judgment, the circuit court erred in finding that Collins failed to serve process on Dr. Toikus Westbrook within 120 days of the filing of her complaint. Therefore, I dissent. Even assuming that Dr. Toikus Westbrook was not served within the 120 days, I also believe that the circuit court' erred in not finding good cause to grant an extension so that Dr. Toikus Westbrook could properly be served. Consequently, underlying this second issue is the following question: Whether good-faith, but unsuccessful, actions taken by a plaintiff to serve a defendant in the waning days of the initial 120-day period allowed by Rule 4 can constitute good cause for not serving the complaint and summons within the 120-day period when, during most of that period, the plaintiff failed to take any action to effectuate process — other than obtaining the summons from the clerk of the court and placing a trusted paralegal in charge of getting the summons and complaint timely served. Stated another way, does the failure of a plaintiff to take any action toward effectuating service of process until the waning days of the 120-day period prevent, as a matter of law, a finding of good cause for not serving process within the 120-day period, despite the effort that was made in the last few days of the 120-day period? :
¶30. Collins’s counsel learned approximately four days prior to the expiration of the 120-day period that his trusted and dependable legal assistant, due to personal problems, had not effectuated process on Dr. Toikus Westbrook. Counsel sprang into action immediately, contacting a process server in Hattiesburg, Mississippi. The process server was given two addresses for Dr. Toikus Westbrook: one in Picayune, Mississippi, and one in Carthage, Mississippi. The process server attempted unsuccessfully to serve Dr. Toikus Westbrook at both addresses. What happened next is best explained by the colloquy between Collins’s counsel and the Hat-tiesburg, Mississippi process server:
Q. Mr. Keith, tell Your Honor what efforts you were asked to make on behalf of my law firm to serve process on Dr. Toikus Westbrook, in or around April of this year?
A. Around April of this year, I was contacted by your law firm, Lang-ston and Langston, to locate and serve process on a Toikus West-brook. If I [re] call there were several—
THE COURT: Let’s refer to them as junior and senior, so we’ll be sure — or can we not?
MR. LANGSTON: Your Honor, it’s not junior and senior.
THE COURT: All right. What is it?
MR. LANGSTON: The father is Jesse Westbrook and this gentleman is Toi-kus Westbrook." So there aren’t two Toikuses, I’m sorry.
THE COURT: Dr. Jesse Westbrook is the father’s name; is that right?
MR. LANGSTON: Yes, sir. He’s a . dentist, so I understand.
THE COURT: All right.
*1216 A. I was given, I believe, it was two addresses initially, One was in Picayune and one was in Carthage, if I’m not mistaken. We attempted to serve process on Dr. Toikus West-brook at both of those locations, He was at neither address. I did ■ further research in order to obtain a current address for Dr. Westbrook.
Q. (By Mr. Langston) What kind of research did you do?
A. It’s commonly referred to as a locator or a skip trace, and it’s basically research,. computer research that shows reported addresses of people that reside at a given address. It’s based on — we call credit header information. And when I did a search by the name of Toikus Westbrook, using his past known addresses as a template or as a method to link a newer address, I discovered an address for him in Germantown, Tennesssee. I obtained a phone number to the address in Germantown, Tennessee, and- called. I believe I called and left a message for Dr. Toikus West-brook. Someone called me back and ultimately identified himself as Dr. Toikus Westbrook. I advised him that I had a delivery for him. He said, you can — I’m going to be leaving my home address. You can have someone meet me at a pizza parlor—
Q. All right. Let me back up just a moment. In that conversation you had, this was a return call you got; is that correct?
A. Yes, sir..
Q. ■ And the return caller, when you answered the telephone, how did he identify himself?
The conversation was had, and I told him that I had a delivery for Dr. Toikus Westbrook.
What did he say originally? <0
He — when I told him that, he said, he’s not available. !>
Okay. <©
And I said, well, I’ve got to give this to him. He’s got to sign for it. And he said, well, what is it about. And I told him it was something to do with a physician. I had found information that Dr. Westbrook was affiliated with the Maxim Physicians. Now, in my experience, I basically told him that I had a delivery regarding Maxim Physicians. ►>
Okay. And so what did he say after that? O’
He- said, oh, that’s- me. - You can bring that to me. And I said, okay. He said, I — that’s me, as in I am Dr. Toikus Westbrook.
Right. <©
And I said, okay, I can have someone over at your house within a— within the hour. And he stated, well, I’m leaving, going to some pizza place. He gave me the address he also gave me his cell phone number. It was at' that time that I contacted my Memphis, Tennessee pi-ocess server, which is Mr. Gary Murphree, and advised him that we — I had a paper that needed to be served on a Dr. Toikus West-brook, and he’d given the information that he would meet him at the said pizza place. ¡>
All right. So you asked him to then— ¿D
I asked him then to go to the pizza place and identify Dr. Toikus West-brook and serve him the papers.
*1217 Q. And do your notes identified [sic] on what day that service at that pizza restaurant, was accomplished?
A. It was — I believe that’s going to be April — I mean, excuse me, July—
Q. Well, all right.
MR. LANGSTON: We’ve admitted it into evidence, Your Honor. The proof of service.
THE COURT: The Affidavit?
MR. LANGSTON: So the date speaks for itself, but—
THE COURT: May I see the — Shane, would you hand it to me.
MR. LANGSTON: April 13th.
THE COURT: This would be Exhibit 1, I believe. Is this it?
A. Yes, sir, Your Honor, I don’t believe I’ve seen that Affidavit. But that’s not mine.
THE COURT: Okay.
MR. LANGSTON: And, Your Honor, for the record, that is within the 10 day period.
THE COURT: So noted.
Q. (By Mr. Langston) All right. Did you bring with you the computer printout that you served for Dr. Toikus Westbrook?
A. Yes, sir, I did.
Q. Okay.
MR. LANGSTON: And, Your Honor, I don’t have an extra copy of it. Opposite counsel’s welcome to see it, but I’d like to offer that into evidence.
THE COURT: Any objection?
MR. HAGWOOD: Let me see it first. I haven’t seen it. May I look at it first?
THE COURT: Okay.
MR. HAGWOOD: If we’re just going to identify it, I’ll have to ask questions about it.
THE COURT: You want it to be marked for identification? Let it be marked for identification.
(Exhibit No. 5 marked for identification only and attached hereto)
Q. (By Mr. Langston) Okay. Mr. Keith, will you identify the exhibit that was just marked?
A. Yes, sir.
Q. What is that?
A. This is a print-out of the research that I conducted in order to find a valid address for Dr. Toikus West-brook. I have an account with Lex-isNexis. If you have an authorized purpose to look for an address belonging to any particular person, in this case the authorized purpose was Service of Legal Process. It will allow you to search by the name, Social Security number, address, et cetera. As I mentioned earlier, I took the addresses that we knew to be valid for him, he was just no longer there, or a past address, and linked it to a address that came up as the top reported address for a current address for Dr. Westbrook.
Q. What address is that?
A. 1666 Newsome Drive, Germantown, Tennessee. It was reported as being current from 1992 to April '12.
Q. April 12, 2012?
A. I’m sorry, April of 2012. It doesn’t give specific dates.
Q. Okay.
A. Or days.
Q. All right. And is that the address that you called—
A. It is.
Q. —and the man identified himself as Dr. Toikus Westbrook?
A. Yes, sir.
*1218 MR. LANGSTON: No farther questions, Your Honor.
¶ 31. The Memphis, Tennessee process server testified as follows:
Q. And Mr. Murphree, do you recall in or around April of 2012, you were asked to deliver process to Dr. Toi-kus Westbrook?
A. Yes, I do.
Q. And tell Your Honor what you were asked to do, who asked you?
A. David Keith’s company called me and asked me to serve a paper, told me where the person would be, what time the person would be there. I got the papers in hand, went down to the place of—
Q, Where did you go?
A. It was a pizza place.
Q. Incredible Pizza?
A. Incredible Pizza was the name of it. It was in — off of Germantown Road there in Memphis, Tennessee.
Q. And tell Your Honor what you did after,you got there.
A. When I got there, I had one of the employees to page ... Toikus West-brook. A black female lady came out and she took me back to the— there was a little room back there and there was a gentleman sitting there. I asked him if he was Toikus Westbrook; he said yes. I had the papers in a box.: I opened the box, I handed him the papers, and I left.
MR. LANGSTON: No further questions.
In addition to providing the testimonies set forth above, both of the process servers gave affidavits containing essentially the same information "as testified to, although the live testimony was a bit more expansive.
¶ 32. Neither Dr, Jesse Westbrook nor Dr. Toikus Westbrook testified concerning what happened during the effort to serve Dr. Toikus Westbrook, choosing instead to submit an affidavit. However, Dr. Toikus Westbrook’s affidavit was not submitted until approximately two weeks after the hearing on the motion to dismiss had been held. In Dr. Jesse Westbrook’s affidavit, he stated that his home address was 1666 Newsum Drive, Germantown, Tennessee, that he was served with process in . the instant case on or about April 14, 2012, and that he had no personal knowledge of the case other than his son was named Toikus Westbrook. In Dr. Toikus Westbrook’s affidavit filed on November 26, 2012, he stated that his current address had been 1642 Debattista Place, New Orleans, Louisiana, since 2006; that his residence telephone number in New Orleans, Louisiana, had been 504-366-2163 since 2006; that his father is Jesse Westbrook and that his father’s address is 1666 Newsum Drive, Germantown, Tennessee; that he had never been served with process in this case.
¶ 33. Based upon this testimony and the affidavits of Drs. Jésse and Toikus Westbrook, the circuit court found:
.The Court finds that from December 16, 2011, when the Complaint was filed, until April 14, 2012, the expiration of the 120-day time period, no application was made to this Court that good cause, existed for the Court to grant an extension of time to serve Dr, Toikus Westbrook, nor has any application been made for extension, to this. date.
On April 12, 2012, Mr. -Robert David Keith, II, a process server hired by Plaintiffs’ counsel, began the process of serving Dr. Toikus Westbrook. On April 13, 2012, the process server emailed- information to the Langston firm, Plaintiffs’ counsel,- detailing that Dr. Toikus Westbrook may have more *1219 than one physical address including Ger-mantown, Tennessee, and-New Orleans, Louisiana, and specifically noted that, “I think the chances of locating and serving him today are very slim” ' It further appears that after receiving notice from the process server that' “the chances of locating and serving Dr. Toikus West-brook today, are very slim,” Plaintiff failed to file a motion for extension of time to serve ■ Dr. Toikus Westbrook. As pointed out by Plaintiffs’ counsel during the hearing of this matter, he had tasked a former legal assistant, who was experiencing some personal problems, with making sure that process was served within the one hundred twenty (120) day period: Plaintiff argued that they acted in good faith during the one hundred twenty (120) service period and believed that they had served process on Dr. Toikus Westbrook until they learned otherwise.
This Court finds that once process server, Davy Keith, had located an address for Dr. Toikus Westbrook in German-town, Tennessee, he contacted Gary Murphree, a process server in German-town, Tennessee, to serve process on Dr. Toikus Westbrook. Mr. Keith called Dr. Jesse Westbrook and left a message. Thereafter, Dr. Jesse Westbrook returned Mr. Keith’s call and told Mr. Keith that Dr. Toikus Westbrook was “not available.” Mr. Keith explained that he had a delivery for Dr. Toikus Westbrook from Dr. Toikus Westbrook’s employer, Maxim Physicians. Although the dialogue between Mr. Murphree and Dr. Jesse Westbrook at the pizza parlor where they met is disputed, Plaintiffs assert that Dr. Jesse Westbrook told him he was Dr. Toikus Westbrook. However, on cross-examination, Mr. Murphree acknowledged- that their strategy was a subterfuge designed to deceive Dr. Jesse Westbrook- to induce him. to appear at the pizza parlor, to receive the summons. In addition, Dr. Jesse Westbrook testified by affidavit that Mr. Murphree asked him if he was “Dr. Westbrook,” who, of course, he is. At this time, Mr. Murphree then served Dr. Jesse Westbrook with the summons, which was enclosed in a box, and left.
¶ 34. It is clear to me that the circuit court in making its findings of fact overlooked key pieces of evidence and misquoted others. First, there is; no evidence in this record to support the circuit ‘court’s finding that Dr. Jesse Westbrook returned Davy’s call. According to Davy’s testimony, hé called the telephone number for the Germantown address and left a message for Dr. Toikus Westbrook. “Someone called back and ultimately identified himself as Dr. Toikus Westbrook.” (emphasis added). Neither Dr. Jesse Westbrook’s nor Dr. Toikus Westbrook’s affidavit addresses this conversation. Therefore, there is no basis in this record for the trial court’s finding that Dr. Jesse Westbrook returned the call. Accepting as a fact that Dr. Toikus Westbook does not live at, and has not ever lived at, 1666 Newsum Drive, Germantown, Tennessee, does not prove that he was not present at that address when (1) the telephone call.was made, (2), the telephone call was returned, (3) and the summons and complaint were served at the pizza establishment. There is no evidence in the record as to Dr. Toikus Westbrook’s whereabouts on April 13, 2012.
¶ 35. The circuit court also found that the Tennessee process server served Dr. Jesse Westbrook on April 13, 2012. Again, there is no evidence in the record to support this finding. While it is not disputed that ■ someone was served at the pizza establishment; there is no evidence in this record to support the circuit court’s finding that the process server served Dr. Jesse Westbrook at the Pizza establish *1220 ment. Neither Dr. Jesse Westbrook nor Dr. Toikus Westbrook, in his affidavit, identifies the place where Dr. -Jesse West-brook was allegedly served with process. The only evidence in the record as to where any service took place and who was served came from the Tennessee process server, who, as stated, testified as follows:
When I got there, I had one of the employees to page ... Toikus West-brook. A black female lady came out and she took me back to .the — there was a little room back there and there was a gentleman sitting there. I asked him if he was Toikus Westbrook;, he said "yes.” I had the papers in a box. I opened the box, I handed him the papers, and I left.
(Emphasis added).
¶ 36. Finally, as noted, the circuit court found:
However, on cross-examination, Mr. Murphree acknowledged that their strategy was a subterfuge designed to deceive Dr. Jesse Westbrook to induce him to- appear at the pizza parlor to receive the summons. In addition, Dr.Jesse Westbrook testified by affidavit that Mr. Murphree asked him if he was “Dr. Westbrook, ” who, of course, he is.
(Emphasis added). I find nothing in the record to support this finding. First, why would Collins’s counsel want to induce Dr, Jesse Westbrook to appear at the pizza parlor- to receive the summons? Any summons received there by Dr. Jesse West-brook would not have effectuated service on Dr. .Toikus Westbrook. Second, with due respect to the circuit court, Dr. Jesse Westbrook did not testify by affidavit .that Mr. Murphree asked him if. he was Dr. Westbrook. As noted, neither Dr. Jesse nor Dr Toikus Westbrooks describes in his affidavit what happened at the pizza establishment.
¶ 37. For the reasons presented, I find the circuit court’s finding — that the Tennessee process server served Dr. Jesse Westbrook, not Dr. Toikus Westbrook — is not supported by substantial evidence. Therefore, I would reverse and render the judgment of the circuit court and remand this case for further proceedings. Alternatively, I would find that Collins proved good cause for an extension of time to serve Dr. Toikus Westbrook, assuming he was not in fact served on April 13, 2012. Despite the circuit court’s finding that Collins never filed a motion for extension of time, it is clear from the record that Collins asked for such relief, although admittedly not via a motion. In Collins’s rebuttal to Dr. Toikus Westbrook’s brief in support of his motion to dismiss, Collins concluded: ■ “Plaintiffs therefore respectfully request this court to deny defendantsf’] motion to dismiss and grant to plaintiffs an extension of time to serve the Defendant, Dr. Toikus Westbrook.” Such an extension could have and should have been granted under the authority of Foss v. Williams, 993 So.2d 378 (Miss.2008).
LEE, C.J., FAIR AND JAMES, JJ., JOIN THIS OPINION. CARLTON, J., JOINS THIS OPINION IN PART.